# United States Court of Appeals
## For the First Circuit

No. 10-1474

UNITED STATES OF AMERICA,

Appellee,

v.

WALTER J. MADERA-ORTIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Boudin, Selya and Lipez, Circuit Judges.

Alan D. Campbell on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Chief, Appellate Division, and George A. Massucco-LaTaif, Assistant United States Attorney, on brief for appellee.

February 25, 2011

**SELYA**, **Circuit Judge**.  After defendant-appellant Walter J. Madera-Ortiz pleaded guilty to transferring obscene materials to a minor, see 18 U.S.C. § 1470, the district court sentenced him to 21 months in prison.  The appellant challenges his sentence as substantively unreasonable.  We affirm.

As this sentencing appeal was preceded by a guilty plea, we draw the background facts from the change-of-plea colloquy, the transcript of the disposition hearing, and the uncontested portions of the presentence investigation report (PSI Report).  United States v. Carrasco-de-Jesús, 589 F.3d 22, 24 (1st Cir. 2009); United States v. Calderón-Pacheco, 564 F.3d 55, 56 (1st Cir. 2009).

On or about January 3, 2009, the appellant entered an internet chat room and initiated a sexually explicit conversation with an individual whom he believed to be a 13-year-old girl. Unbeknownst to the appellant, his correspondent was in fact an agent of the Department of Homeland Security.  During the ensuing exchange, the appellant transmitted webcam footage that showed him touching his genitals and masturbating.  Within a span of approximately five months, the appellant initiated a total of seven instant messaging conversations with his newfound friend.  Each of those contacts featured the transmission of obscene materials.

On June 3, 2009, a federal grand jury sitting in the District of Puerto Rico returned a seven-count indictment against the appellant.  After initially maintaining his innocence, the

appellant admitted his guilt as to all seven counts. The district court accepted the change of plea and ordered the probation department to prepare a presentence report.

When received, the PSI Report revealed that the appellant had been, for the most part, a model citizen. He was college-educated and had retired after more than three decades of well-regarded employment at the Puerto Rico Municipal Collection Center. He assiduously supported his non-custodial daughter. He was an active member of his community and, among other things, conducted basketball clinics for at-risk youth. He had no history of mental illness, substance abuse, or criminality.

The district court convened the disposition hearing on February 25, 2010. After reviewing the PSI Report and hearing from counsel, the court calculated the guideline sentencing range (GSR). That calculation started with a base offense level of 10, see USSG §2G3.1(a); added five levels because the offenses of conviction involved a victim whom the appellant believed to be a minor, see id. §2G3.1(b)(1)(C); added two more levels for the use of an interactive computer service in the commission of the offenses, see id. §2G3.1(b)(3); and deducted three levels for the appellant's timely acceptance of responsibility, see id. §3E1.1(a), (b). In making these adjustments, the district court echoed the recommendations contained in the PSI Report in all but one respect: it granted a three-level decrease for acceptance of responsibility

in lieu of the recommended two-level decrease.[1]  In conjunction with a criminal history category of I, these computations produced a GSR of 15 to 21 months.  The court then briefly reviewed some relevant considerations and concluded that "a sentence at the higher end of the applicable guideline sentencing range is sufficient but not greater than necessary to meet statutory objectives of punishment and of deterrence in this case."  Ultimately, the court sentenced the appellant to a 21-month incarcerative term, to be followed by three years of supervised release.  This timely appeal ensued.

We have urged "the district courts to follow a specifically delineated roadmap when sentencing under the now-advisory federal sentencing guidelines."  United States v. Dávila-González, 595 F.3d 42, 46 (1st Cir. 2010).  This roadmap ought to guide sentencing courts in the mine-run of cases.[2]  It begins with establishing the GSR.  See United States v. Pelletier, 469 F.3d 194, 203 (1st Cir. 2006).  The sentencing court should next determine the appropriateness of any departures.  Id.  The court should then weigh the sentencing factors adumbrated in 18 U.S.C. § 3553(a) and any other considerations that may be relevant in a

---

[1] At the request of the appellant, the court ordered that the additional reduction be reflected in a revised PSI Report.

[2] The roadmap is not meant to have universal application.  We regard it as "helpful, but not obligatory."  Dávila-González, 595 F.3d at 47.

particular case.[3]  Id.  These deliberations will inform the court's assessment of whether to sentence the defendant below, within, or above the GSR.  Id.  The purpose of this exercise is to ensure that the sentence imposed will be the product of the district court's individualized and fact-intensive decisionmaking.  See United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008).

Appellate review of such sentences is highly deferential. We are cognizant that the district court "possesses a number of institutional advantages, including a superior coign of vantage, greater familiarity with the individual case, the opportunity to see and hear the principals and the testimony at first hand, and the cumulative experience garnered through the sheer number of district court sentencing proceedings that take place day by day."

_____

[3] These factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records . . . .

18 U.S.C. § 3553(a).

Id. (citing Gall v. United States, 552 U.S. 38, 50-52 (2007)). Accordingly, we review sentencing decisions for abuse of discretion. Id.

Ordinarily, this review is bifurcated. First, we evaluate the procedural soundness of the sentence; second, we assay its substantive reasonableness. See id. Here, however, the appellant concedes the correctness of the district court's guideline calculations and lodges no claim of procedural error. Consequently, we narrow the lens of our inquiry to focus on substantive reasonableness.

In assessing the substantive reasonableness of a sentence, it is significant that the sentence falls within the GSR. "[A] defendant who attempts to brand a within-the-range sentence as unreasonable must carry a heavy burden." Pelletier, 469 F.3d at 204. Although such a sentence is not presumed to be reasonable, it requires less explanation than one that falls outside the GSR. United States v. Turbides-Leonardo, 468 F.3d 34, 41 (1st Cir. 2006). To undermine the substantive reasonableness of a within-the-range sentence, a defendant must "adduce fairly powerful mitigating reasons and persuade us that the district judge was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be 'reasonable.'" United States v. Navedo-Concepción, 450 F.3d 54, 59 (1st Cir. 2006). In the last analysis, "it is not a basis for reversal that we, if

-6-

sitting as a court of first instance, would have sentenced the defendant differently."  Martin, 520 F.3d at 92.

Before us, the appellant argues that his sentence is substantively unreasonable because the district court (i) "treated the GSR as more of a finish line than as a starting point," (ii) gave an inadequate explanation, (iii) did not fully consider mitigating circumstances, and (iv) left no wiggle room to sentence a defendant convicted of the same offense on the basis of more heinous conduct.[4]  We examine these plaints sequentially.

We need not linger long over the appellant's first remonstrance.  There is simply nothing in the record that suggests that the district court either treated the GSR as a set of shackles or felt itself constrained to sentence within that range regardless of what the record revealed.  In fact, at the disposition hearing the court described its guideline calculations as "advisory."  We will not presume based solely on the suspicions of a disappointed defendant that a sentencing court has turned a blind eye to settled law.  See, e.g., Dávila-González, 595 F.3d at 48 (finding no error where "[r]ead as a whole, the sentencing transcript makes manifest not only the court's awareness that the GSR was merely an initial benchmark, but also its conclusion that the circumstances of the

---

[4] In his brief, the appellant also laments the "onerous" conditions of his supervised release.  But the appellant has not developed any argument directed to this point and, thus, we treat it as waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-7-

case made it appropriate to hew to that benchmark in fashioning the appellant's sentence"); Pelletier, 469 F.3d at 204 (finding no error where "[l]ooking at the disposition hearing as a whole, it is perfectly clear that the district court appreciated the advisory nature of the guidelines and acted accordingly").

We turn next to the district court's explanation for the sentence. We have confirmed that a sentencing court's explanation need not be "precise to the point of pedantry." United States v. Fernández-Cabrera, 625 F.3d 48, 53 (1st Cir. 2010). "The level of detail required varies depending on the circumstances." Id. at 53-54.

In the case at hand, the court's explanation, though brief, contained a clear, cogent, and coherent rationale for its decision: the court found that "[t]he offence committed by [the appellant] . . . is a very serious and a dangerous one," which "occurred repeatedly against the same person believed by [the appellant] to be a minor." It was, in the court's view, an offense that "can influence the mind of a very young person in an injurious manner." Those considerations, the court thought, warranted a 21-month sentence.

To be sure, the sentencing court's explanation for the sentence is terse. But "brevity is not to be confused with inattention." Turbides-Leonardo, 468 F.3d at 42. The explanation must be read in light of the record as a whole. Dávila-González,

595 F.3d at 48-49; Martin, 520 F.3d at 92-93. As long as we can discern "a plausible sentencing rationale" which reaches "a defensible result," the sentence will be upheld. See Martin, 520 F.3d at 96; see also United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc). Applying these criteria, we deem the sentencing court's explanation sufficient. See, e.g., Carrasco-de-Jesús, 589 F.3d at 29-30; Pelletier, 469 F.3d at 204.

This brings us to the appellant's third assignment of error. The record makes manifest that the district court examined the relevant sentencing factors. Indeed, the court, in pronouncing sentence, expressly stated that it had considered all the section 3553(a) factors. This is an important datum: on appeal, "the fact that the court stated that it had considered all the section 3553(a) factors is entitled to some weight." Dávila-González, 595 F.3d at 49 (citing United States v. Morales-Machuca, 546 F.3d 13, 26 (1st Cir. 2008)).

Nor was this all. Among other things, the court specifically noted many of the appellant's virtues (e.g., that he had no prior criminal record, that he had no history of substance abuse, that he had earned a college degree, and that he had retired after more than three decades of honorable service as a public employee). Stripped of rhetorical flourishes, the appellant's real complaint seems to be not that the court failed to mull the complex of factors but, rather, that the court weighed those factors in a

manner that disfavored the appellant. To be sure, the sentence upon which the court settled was at the top of the GSR. Nevertheless, a defendant does not ensure himself a reduced sentence simply by identifying potentially mitigating factors. Carrasco-de-Jesús, 589 F.3d at 29. The sentencing court's task is to sift the available information and balance the pertinent factors (both mitigating and aggravating). That the court below chose not to give greater weight to the appellant's admirable conduct in the past, his efforts at rehabilitation, and the fact that he was caught in a sting operation represented a judgment call. Within wide margins, not approached here, such judgment calls are for the sentencing court, not for this court. See, e.g., United States v. Stone, 575 F.3d 83, 97 (1st Cir. 2009).

Finally, the district court's decision to impose a top-of-the-range sentence will not, as the appellant asseverates, foreclose appropriate punishment for defendants who commit the same offenses by means of more heinous conduct. The precedent upon which the appellant relies, United States v. Franquiz-Ortiz, 607 F.3d 280 (1st Cir. 2010) (per curiam), is readily distinguishable. There, we remanded for resentencing because "by imposing the statutory maximum sentence, the [district] court left no room for harsher sentences for [defendants] with higher criminal history categories and more serious violations." Id. at 282. Here, in contrast, the appellant's sentence falls far short of the 10-year

statutory maximum for the offense of conviction.  <u>See</u> 18 U.S.C. § 1470.  The guidelines are no longer mandatory, <u>see</u> <u>United States</u> v. <u>Booker</u>, 543 U.S. 220, 245 (2005), and upward variances are available for aggravated cases.

We need go no further.  The sentence imposed represents a defensible result supported by a plausible sentencing rationale.  Consequently, we leave it undisturbed.

**<u>Affirmed</u>**.