# United States Court of Appeals
## For the First Circuit

No. 10-2236

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN COLÓN-RODRÍGUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Selya and Lipez, Circuit Judges.

Victor J. González-Bothwell, with whom Héctor E. Guzman-Silva, Federal Public Defender, and Patricia A. Garrity, Assistant Federal Public Defender, were on brief, for appellant.
Julia M. Meconiates, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

October 2, 2012

**LIPEZ**, **Circuit Judge**.  Hurricane Georges struck Puerto Rico on September 21, 1998.  In the storm's wake, the island was declared a "major disaster" area eligible for various federal aid programs.  See United States v. Alfonzo-Reyes, 592 F.3d 280, 284 (1st Cir. 2010).  One such program, administered by the Farm Service Agency ("FSA"), offered low-interest emergency loans to qualified farmers to help restore farming operations or rebuild structures damaged by the hurricane.  See id.

Because of the complexity of the loan application process, the FSA trained a number of independent contractors to assist farmers in preparing and filing the necessary documentation. Among these contractors was appellant Juan Colón-Rodríguez ("Colón"), an agronomist with a degree in agricultural sciences. In all, Colón submitted successful loan applications on behalf of at least eight farmers, earning approximately $45,000 in commissions.  During a 2002 audit, however, the FSA discovered a series of irregularities in these applications. Colón was indicted in late 2007 and convicted in 2009 in the United States District Court for the District of Puerto Rico on twelve counts of making false statements on FSA loan applications in violation of 18 U.S.C. § 1014 and one count of defrauding a financial institution in violation of 18 U.S.C. § 1344.  He was found not guilty on five other counts.

After the verdict, Colón moved for a judgment of acquittal, contesting the sufficiency of the evidence against him. The district court summarily denied the motion. The court then sentenced Colón to thirty-seven months' imprisonment on each count, to be served concurrently. On appeal, Colón challenges the sufficiency of the evidence for three of his convictions and his sentence as substantively unreasonable. For the reasons described below, we affirm two of the challenged convictions, vacate the third, and affirm the sentence.

## I.

We begin with Colón's motion for a judgment of acquittal, the denial of which we review de novo. See United States v. Rodríguez-Vélez, 597 F.3d 32, 38 (1st Cir. 2010). Colón argued to the district court that there was insufficient evidence to support his conviction on any count. His focus on appeal is narrower. He takes aim only at Counts Three, Ten, and Eighteen. We scrutinize the relevant evidence in the light most favorable to the verdict, which "must stand unless the evidence is so scant that a rational factfinder could not conclude that the government proved all the essential elements of the charged crime beyond a reasonable doubt." Id. at 39 (emphasis omitted).

### A. Counts Three and Ten

Count Three charged Colón with violating 18 U.S.C. § 1014 by making a false statement on an FSA loan application he filed on

behalf of José Aponte-Díaz ("Aponte"), a poultry farmer.[1]  Count Ten charged the same conduct with respect to another farmer, Adalberto Flores-Zayas ("Flores").  "To establish a violation of § 1014, the government must prove that (1) the defendant made a false statement; (2) the defendant acted knowingly; and (3) the false statement was made for the purpose of influencing action on the loan."  Alfonzo-Reyes, 592 F.3d at 291.  It is undisputed that the government introduced sufficient evidence as to the third of these elements.  In our view, there also was sufficient evidence of the other two elements on both counts.

### 1.    Count Three

The evidence showed that Colón helped Aponte apply for and obtain a $305,015 emergency loan from the FSA shortly after Hurricane Georges, charging a two-percent commission for his services.  However, some of the statements made by Colón in filling out Aponte's loan application were false.[2]  Contrary to Colón's

---

[1] 18 U.S.C. § 1014 criminalizes, inter alia, the making of a false statement to the "Secretary of Agriculture acting through the Farmers Home Administration or successor agency."  The FSA is a successor agency to the Farmers Home Administration and, hence, within the statute's ambit.  See Alfonzo-Reyes, 592 F.3d at 288-89; United States v. Barreto-Barreto, 551 F.3d 95, 97 (1st Cir. 2008); see also 7 U.S.C. § 6932(b)(3).

[2] Although the forms bore Aponte's signature, evidence in the record indicates that Colón filled them out.  Colón does not dispute that writing misinformation on the forms is sufficient to establish that he made a false statement within the meaning of 18 U.S.C. § 1014.  Cf. United States v. Tremont, 429 F.2d 1166, 1168-69 (1st Cir. 1970) (sustaining conviction under 18 U.S.C. § 1010 for making false statement to Department of Housing and Urban

-4-

assertions, the record discloses more than sufficient evidence to support his conviction. For example, the application stated that the storm had caused $115,950 of damage to four poultry barns belonging to Aponte. During trial, Aponte testified that he had only owned two barns at the time of the storm. The other two barns were purchased later, long after the storm, with proceeds from the FSA loan. What is more, Aponte testified that he had informed Colón that he planned to spend some of the loan proceeds on the new barns. While the government may have lacked other forms of direct evidence that demonstrated the falsity of Aponte's statements, a rational jury easily could have relied on the trial testimony, as well as reasonable inferences drawn from that testimony, to conclude that Colón knew the amount of damages claimed on the application to be false. See Alfonzo-Reyes, 592 F.3d at 291 ("Direct evidence is not required to find [a defendant] guilty, and juries are entitled to draw reasonable inferences at trial based on circumstantial evidence.").

Colón attempts to explain Aponte's testimony by characterizing it as a mere failure to recall the specific number of barns he owned, and points to evidence corroborating the amount

Development where defendant wrote fraudulent information on application that was ultimately signed by another); United States v. Sackett, 598 F.2d 739, 741-42 (2d Cir. 1979) (upholding conviction where defendant made oral misrepresentations regarding financial condition that were transferred by another person to loan application that defendant did not fill out or sign).

of loss documented in the application. "[T]he possibility of innocuous explanations for [a defendant's] behavior does not foreclose the jury's contrary inferences," however. United States v. Ortiz, 447 F.3d 28, 33 (1st Cir. 2006). While Colón was certainly entitled to make these arguments to the trier of fact, the jury had a more than sufficient basis for rejecting his explanations and returning a verdict against him. Consequently, Colón's motion as to Count Three was correctly denied.

## 2. Count Ten

The same is true of Count Ten. The government proved that, hoping to restore his farm to working order, Flores hired Colón to prepare his FSA loan application. Lillian Mateo, Flores's wife and business partner, testified that she and her husband had signed blank paperwork for Colón to complete.[3] According to Mateo, however, when the application was approved, she and Flores were "surprised" to receive a loan of $250,000, since they had only been expecting $150,000. When showed a copy of the loan application during trial, Mateo said that several of the claimed items of damage had been exaggerated. For example, the application listed $45,000 in losses to the farm's warehouses and $73,500 in losses to the greenhouses, but these amounts were more than was required to repair the damaged structures.

---

[3] Flores was unavailable to testify at trial due to a medical condition.

Seeking to rebut the force of this evidence, Colón testified in his own defense that he had occasionally spoken with Flores outside of Mateo's presence and that all of the figures listed on the loan application had, in fact, come from Flores. If accepted as true, Colón's testimony might have undercut the government's case against him, as it could have created reasonable doubt regarding whether he had known the statements on Flores's loan application to be false. However, "witness credibility is . . . a call for the jury," United States v. Jones, No. 10-1894, 2012 WL 954755, at *2 (1st Cir. Mar. 22, 2012), and it was the jury's prerogative to disbelieve Colón's story, see United States v. Manor, 633 F.3d 11, 14 (1st Cir. 2011); United States v. Lipscomb, 539 F.3d 32, 40 (1st Cir. 2008). Crediting Mateo's testimony -- particularly her recollection that both she and her husband had been "surprised" by the amount of their FSA loan -- a rational jury could have found that Colón knowingly inflated the amount of damages claimed on Flores's application. Therefore, the district court did not err in denying Colón's motion for a judgment of acquittal as to Count Ten.

## B. Count Eighteen

There was an error in the court's denial of Colón's motion for a judgment of acquittal with respect to Count Eighteen, which charged him with defrauding a financial institution in violation of 18 U.S.C. § 1344. The elements of this crime are well

established: "(1) the defendant must engage in a scheme or artifice to defraud, or must make false statements or misrepresentations to obtain money from (2) a financial institution and (3) must do so knowingly."  United States v. Blasini-Lluberas, 169 F.3d 57, 64 (1st Cir. 1999).

No rational jury could have concluded that the government proved the second of these elements beyond a reasonable doubt.  As the government has conceded, it offered no evidence that the FSA qualified as a "financial institution" at the time of the offense conduct in this case, as that term was then defined by 18 U.S.C. § 20.[4]  Accordingly, Colón's conviction on Count Eighteen must be reversed.

## II.

Based on the date of the offense conduct in this case, Colón's sentence was determined by reference to the 1998 edition of the United States Sentencing Guidelines ("Guidelines").  See USSG § 1B1.11(b)(1) (1998).  Starting from a base offense level of six, see id. § 2F1.1(a), the district court added a two-level increase

---

[4] Subsequent to the events in this case, Congress amended the definition of "financial institution" in 18 U.S.C. § 20 to include a "mortgage lending business."  See Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, § 2(a)(3); see also United States v. Bennett, 621 F.3d 1131, 1138 (9th Cir. 2010).  A mortgage lending business is "an organization which finances or refinances any debt secured by an interest in real estate, including private mortgage companies and any subsidiaries of such organizations, and whose activities affect interstate or foreign commerce."  18 U.S.C. § 27.  This case does not require us to decide whether the FSA is included within the expanded definition of "financial institution."

for obstruction of justice, see id. § 3C1.1, and another two-level increase because Colón's crimes had involved "more than minimal planning," id. § 2F1.1(b)(2)(A). The court also added an eleven-level increase because the loss associated with the falsified loan applications totaled more than $800,000.[5]  See id. § 2F1.1(b)(1)(L). These increases brought the total offense level to twenty-one and, paired with a criminal history category of I, produced an advisory Guidelines sentencing range ("GSR") of thirty-seven to forty-six months' imprisonment. After taking into account the sentencing factors enumerated in 18 U.S.C. § 3553(a), the district court imposed an incarcerative term at the bottom of the GSR: thirty-seven months on each count, to be served concurrently.

---

[5] The presentence report ("PSR") noted that the loans that were part of the indictment totaled about $2.27 million. Some of the disbursed money was justified by the borrowers' needs; once that amount was subtracted, the PSR concluded that the total amount Colón fraudulently obtained was about $1.65 million. Only $360,000 of this amount had been repaid, meaning that the defendant's conduct had therefore resulted in more than $800,000 but less than $1.5 million of loss. See USSG § 2F1.1(b)(L)-(M). The PSR observed, however, that since collection efforts were ongoing and because many borrowers stopped their farming operations for reasons other than Colón's fraudulent activities, the government lacked reliable information concerning the "specific" loss amount attributable to the defendant's conduct. The district court appeared to adopt this reasoning at sentencing, when it found that "an exact amount of loss could not reasonably be determined" but that Colón's conduct had resulted in at least $800,000 of loss. At oral argument, Colón characterized this reasoning as an intended loss calculation. We make no judgment on that point. What matters for this appeal is that Colón does not challenge the $800,000 figure.

-9-

Colón challenges this sentence as substantively unreasonable. He concedes the correctness of the district court's GSR calculation but claims he was entitled to a downward variance due to the existence of mitigating circumstances. He says the $800,000 loss figure, while accurate, significantly overstated the seriousness of his conduct, particularly since he only earned approximately $45,000 in commissions.[6] See United States v. Pol-Flores, 644 F.3d 1, 5 (1st Cir. 2011) ("[O]ne ground supporting a below-guideline sentence could be that the intended loss attributed to [the defendant] overvalued the seriousness of the offense." (internal quotation marks omitted)). He also points out that none of the farmers whose loan applications he falsified were charged with any crimes, and he insists that he and his family suffered immensely during the long (and unexplained) interim between when his crimes were first investigated in 2002 and when he was finally brought to trial in 2009.

"[W]e review sentencing decisions for abuse of discretion." United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st

_____

[6] As we recently explained in United States v. Appolon, ___ F.3d ____, 2012 WL 4120401, at *15 (1st Cir. Sept. 19, 2012), the defendant's gain should only be used to measure loss "as a last resort," in the event that "neither actual loss nor intended loss can be gauged . . . ." Colón does not challenge the district court's decision to use an intended loss measure to establish the applicable GSR, but he remains entitled to argue that the sentence was substantively unreasonable because the intended loss "overvalued the seriousness of the offense." United States v. Thurston, 456 F.3d 211, 219 (1st Cir. 2006), rev'd on other grounds, 552 U.S. 1092 (2008).

Cir. 2011); see also United States v. Fernández-Hernández, 652 F.3d 56, 71 (1st Cir. 2011). "In assessing the substantive reasonableness of a sentence, it is significant that the sentence falls within the GSR." Madera-Ortiz, 637 F.3d at 30. "[A] defendant who attempts to brand a within-the-range sentence as unreasonable must carry a heavy burden." United States v. Pelletier, 469 F.3d 194, 204 (1st Cir. 2006); see also United States v. Clogston, 662 F.3d 588, 592-93 (1st Cir. 2011) ("Challenging a sentence as substantively unreasonable is a burdensome task in any case, and one that is even more burdensome where, as here, the challenged sentence is within a properly calculated GSR."). Such a defendant "must adduce fairly powerful mitigating reasons and persuade us that the district court was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be reasonable." Madera-Ortiz, 637 F.3d at 30 (internal quotation marks omitted).

Colón has not carried his burden. The district court adequately, if succinctly, explained the rationale behind its sentencing decision. See Madera-Ortiz, 637 F.3d at 31 ("To be sure, the sentencing court's explanation for the sentence is terse. But brevity is not to be confused with inattention." (internal quotation marks omitted)); United States v. Turbides-Leonardo, 468 F.3d 34, 41 (1st Cir. 2006) ("[S]entences that fall inside a properly calculated [GSR] require a lesser degree of explanation

than those that fall outside the [GSR]."). In particular, the court observed that Colón had engaged in a "serious scheme to defraud" the FSA and that his crimes contributed to an unprecedented shortfall in the FSA's emergency loan funding, jeopardizing the agency's ability to provide aid. See Alfonzo-Reyes, 592 F.3d at 287 ("[T]he fraudulent loans made as a result of Hurricane Georges' disaster depleted the FSA emergency funds in a single fiscal year for the first time in the program's history.").

The district court also noted that, in fashioning Colón's sentence, it had considered the various sentencing factors set forth in 18 U.S.C. § 3553(a), including Colón's lack of criminal history and familial responsibilities. See Madera-Ortiz, 637 F.3d at 31 ("[O]n appeal, the fact that the court stated that it had considered all the section 3553(a) factors is entitled to some weight." (internal quotation marks omitted)). That the court chose to attach less significance to certain mitigating circumstances than Colón thinks they deserved does not make his sentence substantively unreasonable. See Clogston, 662 F.3d at 593. As we have said, the weighing of different sentencing factors "is largely within the court's informed discretion." Id.; see also Madera-Ortiz, 637 F.3d at 31.

In sum, after considering the relevant sentencing factors, the district court "articulate[d] a plausible rationale and arrive[d] at a sensible result." United States v. Carrasco-de-

<u>Jesús</u>, 589 F.3d 22, 30 (1st Cir. 2009).  Hence, there was no abuse of discretion in the court's imposition of a sentence at the bottom of Colón's GSR.[7]

**III.**

Colón's conviction on Count Eighteen is <u>reversed</u> and his sentence on that count is <u>vacated</u>.  In all other respects, the judgment of the district court is <u>affirmed</u>.

So <u>ordered</u>.

---

[7] Colón stated at oral argument that he does not seek a resentencing in light of the vacatur of his conviction on Count Eighteen.  Since he received identical concurrent sentences on each count of conviction, he took the position that his acquittal on this count will not shorten the time he must spend in prison. Accordingly, we will not order a resentencing that Colón has expressly declined.

-13-