# United States Court of Appeals
## For the First Circuit

No. 13-1228

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN FELIX SANTIAGO-RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Selya and Thompson,

Circuit Judges.

Héctor E. Guzmán, Jr., Federal Public Defender, Héctor L. Ramos-Vega, Assistant Federal Public Defender, Supervisor, Appeals Division, and Patricia A. Garrity, Assistant Federal Public Defender, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Chief, Appellate Division, and John A. Mathews II, Assistant United States Attorney, on brief for appellee.

February 28, 2014

**SELYA, Circuit Judge.** Following his guilty plea, defendant-appellant Juan Felix Santiago-Rivera was sentenced to a term of immurement above the top of the applicable guideline sentencing range (GSR). The defendant appeals, arguing that the district court failed to make an individualized assessment of his case and, in the bargain, imposed a substantively unreasonable sentence. After careful consideration, we affirm.[1]

The relevant facts are easily assembled. On March 15, 2012, a police officer saw the defendant walking down a road in Morovis, Puerto Rico. The defendant fit the description of a suspect in an aborted carjacking that had been attempted earlier that day. The officer drew his sidearm and ordered the defendant to halt. In response, the defendant shot the officer, seriously wounding him. He then struck the officer in the head with his firearm, stole the officer's gun, and fled in the officer's patrol car.

In due season, a federal grand jury handed up an indictment against the defendant. Count 1 charged carjacking resulting in serious bodily injury, see 18 U.S.C. § 2119(2); count 2 charged use of a firearm during and in relation to a crime of

---

[1] The defendant's counsel below, Joannie Plaza-Martinez, piggy-backed on the defendant's notice of appeal to challenge a sanction that the district court had levied against her. Because the sanctions order raises completely separate issues, we will decide Plaza-Martinez's claim of error in a separate and subsequent opinion.

violence, see id. § 924(c)(1)(A)(iii); and count 3 charged possession of a stolen firearm, see id. §§ 922(j), 924(a)(2). Count 1 carried a maximum incarcerative term of 25 years, count 2 carried a mandatory minimum and consecutive term of 10 years, and count 3 carried a maximum term of 10 years.

After some preliminary skirmishing, the defendant pleaded guilty to all three counts. There was no concomitant plea agreement. The probation office prepared a presentence investigation report (PSI Report), which grouped counts 1 and 3 because they involved the same victim and were connected by a common criminal objective. See USSG §3D1.2. For the grouped counts, the probation officer recommended an adjusted offense level of 30 and a criminal history category of III. These calculations yielded a GSR of 121 to 151 months on the grouped counts. As to count 2, the PSI Report noted that the statutory mandatory minimum sentence was 120 months and that any sentence on count 2 had to run consecutive to whatever sentence was imposed on the grouped counts.

The PSI Report identified certain factors that might warrant an upward variance. Those factors included the seriousness of the offenses of conviction, the defendant's notorious history of criminal conduct, and his commission of violent acts for which he had not been charged. The probation officer also noted that state-court charges, unrelated to the offenses of conviction, were pending against the defendant for attempted murder and illegal use

-3-

of a firearm.  Finally, the PSI Report contained a victim impact statement describing the considerable physical, psychological, familial, and financial devastation wrought by the defendant's attack.

At the disposition hearing, the district court accepted the guideline calculations limned in the PSI Report.  Defense counsel argued for a downward variance — a 15-year sentence.  The attorney emphasized that the defendant had endured a troubled childhood and asserted that he suffered from diminished mental capacity.  The prosecutor rejoined that the victim had been forced to "beg[] for his life" after the defendant put a gun to his head, declared that the victim was "lucky" to be alive, and asked for a sentence of life imprisonment.  The prosecutor argued that the defendant was "a person who has no respect for the law" and "no respect for the life of others."

After hearing the lawyers' importunings and giving the defendant an opportunity to allocute, the district court remarked the high incidence of violent crime in Puerto Rico (including carjackings resulting in serious bodily harm and offenses involving "[f]irearms like the one [that the defendant] possessed").  The court went on to say that it was "duty-bound to consider Puerto Rico's high firearms and violent crime rate" in shaping the defendant's sentence.

When all was said and done, the court varied upward and imposed an incarcerative sentence of 240 months with respect to the grouped counts,[2] to be followed by a consecutive 120-month term of immurement (the statutory mandatory minimum) on count 2. This timely appeal ensued.

Before us, the defendant contends that his sentence is both procedurally flawed and substantively unreasonable. These two contentions pivot on a common theme: that the district court focused too little on the potentially mitigating circumstances of his upbringing and mental capacity and too much on the high incidence of crime in the community.

Federal criminal sentences imposed under the advisory guidelines regime are reviewed for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). Within this rubric, we assay the district court's findings of fact for clear error and its interpretation and application of the guidelines de novo. See United States v. Walker, 665 F.3d 212, 232 (1st Cir. 2011). If no procedural error emerges, the district court's ultimate choice of a sentence is evaluated for abuse of discretion simpliciter. Id.

---

[2] To be precise, this sentence was imposed only on count 1, as the maximum sentence available under count 3 is 120 months. See 18 U.S.C. § 924(a)(2). A concurrent sentence of that length was imposed on count 3.

We start with the defendant's claim that the district court gave too short shrift to relevant sentencing factors while at the same time giving too much heft to peripheral factors. The general mine-run of sentencing factors is delineated in 18 U.S.C. § 3553. It is common ground that a sentencing court may commit procedural error by "failing to consider the § 3553(a) factors." Gall, 552 U.S. at 51. But the weighing of relevant factors "is largely within the court's informed discretion." United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011).

The defendant does not contend that it was error for the district court to consider the Puerto Rico crime rate and kindred matters in reaching its sentencing determination. Nor could he. We have squarely held that "a sentencing judge may consider community-based and geographic factors." United States v. Flores-Machicote, 706 F.3d 16, 22-23 (1st Cir. 2013). Such an appraisal is appropriate because "[c]ommunity-based considerations are inextricably intertwined with deterrence," and "[d]eterrence is widely recognized as an important factor in the sentencing calculus." Id. at 23 (citing 18 U.S.C. § 3553(a)(2)(B)).

Here, the defendant makes a narrower argument: he insists that it was error for the district court to put so much weight on these parochial concerns. This insistence is misplaced. Although "[i]t is possible for a sentencing judge to [err by] focus[ing] too

much on the community and too little on the individual," <u>id.</u> at 24, that phenomenon did not occur here.

To begin, the sentencing judge explicitly noted that he had considered all of the section 3553(a) factors. Such a statement is entitled to significant weight, <u>see</u>, <u>e.g.</u>, <u>United States</u> v. <u>Dávila-González</u>, 595 F.3d 42, 49 (1st Cir. 2010), and the record here offers no reason to doubt the judge's word. Indeed, the judge discussed (albeit briefly) a number of the section 3553(a) factors, including the serious nature of the offenses of conviction, the defendant's unattractive criminal history,[3] and the need for adequate deterrence.

So, too, the judge specifically addressed the defendant's potentially mitigating personal background and traits. While he explained that he had considered the defendant's arguments concerning these matters as well as the available documentation, he did not give them much credit. By the same token, he heard extensive arguments and engaged in a protracted colloquy anent the defendant's claim of diminished mental capacity; in the end, however, he was singularly unimpressed.

It would serve no useful purpose to cite additional book and verse. The short of it is that the record reflects that the

---

[3] Reading the sentencing transcript as a whole, we believe that it is safe to say that the judge implicitly found that the defendant's criminal history score substantially under-represented his past involvement in violent crime.

sentencing court sufficiently reviewed the section 3553(a) factors. On the one hand, the court considered the violent circumstances of the defendant's crime and the implications of his criminal history; on the other hand, it considered the defendant's personal circumstances, including his claim of diminished mental capacity. The court weighed the aggravating factors more heavily than the mitigating factors, and then explained why a substantial upward variance was indicated.

The defendant alleges that the district court did not adequately explain his sentence.[4]  See Gall, 552 U.S. at 51 (discussing sentencing court's duty "to adequately explain the chosen sentence").  This allegation is belied by the record: the court below may not have waxed longiloquent but "brevity is not to be confused with inattention." United States v. Turbides-Leonardo, 468 F.3d 34, 42 (1st Cir. 2006).  Here, moreover, any gaps in the court's reasoning can easily be filled by "comparing what was argued by the parties or contained in the pre-sentence report with what the judge did."  United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc).

---

[4] The defendant's claim of error is circumscribed.  Even though the district court did not provide a written statement of reasons pursuant to 18 U.S.C. § 3553(c)(2), the defendant did not challenge this omission below.  Nor does he do so on appeal. Consequently, any claim based on this omission is waived.  See Igartúa v. United States, 626 F.3d 592, 603 (1st Cir. 2010); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

This sort of triage is the essence of the obligation that the law imposes on a sentencing judge. Taking into account the totality of the circumstances, it is evident that here, as in Flores-Machicote, "the judge may have lingered longer than necessary on community characteristics, [but] the claim that he did not give individualized attention to the sentencing determination is unfounded." 706 F.3d at 24.

Having found no procedural error, we turn next to the defendant's claim that the sentence was substantively unreasonable. At bottom, this claim repackages the assertions previously discussed: its central theme is that the court overvalued community-based factors and undervalued the defendant's personal circumstances, resulting in an unreasonably harsh sentence.

There is rarely, if ever, a single correct sentence in any specific case. Instead, there is almost always a "range of reasonable sentences" for any given offense. Martin, 520 F.3d at 92. When choosing a particular sentence, "the district court possesses a number of institutional advantages, including a superior coign of vantage." United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011) (internal quotation mark omitted). In the last analysis, "the linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." Martin, 520 F.3d at 96.

Variant sentences, whether above or below the GSR, are reviewed in light of these principles. When reviewing the reasonableness of a variant sentence, the highly deferential abuse-of-discretion standard remains in full force. See United States v. Gallardo-Ortiz, 666 F.3d 808, 811-12 (1st Cir. 2012). Although an appellate court must take into account the full extent of any variance, the dispositive question remains whether the sentence is reasonable in light of the totality of the circumstances. See id.

In the case at hand, we have scant difficulty concluding that the defendant's above-the-range sentence "serve[d] the objectives of sentencing." Kimbrough v. United States, 552 U.S. 85, 91 (2007). The defendant wielded a firearm to commit a brutal attack on a police officer. The record makes manifest that this incident was part and parcel of a persistent pattern of serious crimes — a pattern that the sentencing court was entitled to find could not be excused by either the unhappy circumstances of the defendant's childhood or his mental capacity. To cinch matters, the court's "positive reasons" for imposing its chosen sentence were sufficient to ground the variance. United States v. Navedo-Concepción, 450 F.3d 54, 58-59 (1st Cir. 2006). In particular, the court closely connected the deterrent effect of the variance to the specifics of the defendant's crime and his felonious past. See United States v. Politano, 522 F.3d 69, 74 (1st Cir. 2008). A sentencing court's reasons for a variance "should typically be

-10-

rooted either in the nature and circumstances of the offense or the characteristics of the offender." Martin, 520 F.3d at 91. The sentence imposed in this case was rooted in both sets of considerations.

We have said before, and today reaffirm, that when a sentencing court varies from a properly calculated GSR, the factors that it chooses to emphasize "must add up to a plausible rationale [] and must justify a variance of the magnitude in question." Id. For the reasons elucidated above, the district court's calibration of the sentencing scales passes this test. The mere fact that "the sentencing court chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable." Clogston, 662 F.3d at 593. The decisive consideration is that the sentence that the court chose, though severe, was not outside the wide universe of reasonable sentences for the offenses of conviction.

We need go no further. Where, as here, a defendant who has compiled a history of violence commits a vicious crime, he scarcely can be heard to complain that the sentencing judge meted out a correspondingly stiff sentence. After all, "whatsoever a man soweth, that shall he also reap." Galatians 6:7.

**The defendant's sentence is affirmed.  We retain jurisdiction for the purpose of considering the separate claim of the co-appellant. See supra note 1.**