**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 18-1721

UNITED STATES OF AMERICA,

Appellee,

v.

DONALD CAIN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge

Before

Torruella, Stahl, and Kayatta,
Circuit Judges.

Joshua L. Solomon and Pollack Solomon Duffy LLP on brief for appellant.
Renée M. Bunker, Assistant United States Attorney, Appellate Chief, and Halsey B. Frank, United States Attorney, on brief for appellee.

July 1, 2019

**STAHL**, **Circuit Judge**. Defendant-Appellant Donald Cain appeals his sentence for stalking. Following Cain's guilty plea, the district court calculated a Sentencing Guidelines ("Guidelines") range of 30 to 37 months. The district court ultimately imposed the statutory maximum sentence of 60 months, noting that Cain had relentlessly harassed the victim for over a year, threatened her children, mother, and former husband, and repeatedly defied a court protection order.

On appeal, Cain challenges the substantive reasonableness of his sentence. He contends that the district court abused its discretion in imposing an above-Guidelines sentence. We affirm.

## I. Factual Background

"Because this sentencing appeal follows from a guilty plea, we 'glean the relevant facts from the plea agreement, the change-of-plea colloquy, the presentence investigation report [PSR], and the transcript of [sentencing].'" United States v. Severino-Pacheco, 911 F.3d 14, 17 (1st Cir. 2018) (quoting United States v. Fernández-Cabrera, 625 F.3d 48, 50 (1st Cir. 2010)).

After a short courtship, Cain married L.H., a resident of Houlton, Maine, in August 2014. At the time, Cain was living in Calais, Maine, and working as a superintendent overseeing the construction of a local Walmart. Shortly after the marriage, Cain relocated to San Antonio, Texas, for his employment. Although

Cain insisted that L.H. accompany him to Texas, she decided to remain in Maine because of her strong ties to the area.

In November 2014, L.H.'s employer alerted the FBI "that multiple anonymous complaints were being filed on a daily basis against L.H. on the [company's] website." The complaints "accused L.H. of sexually harassing her employees, barring employment to people because of their race, flirting with married customers, and generally providing poor service to customers." After conducting an internal investigation, the employer concluded that the complaints were fabricated and that "[t]he frequency and volume of the complaints caused enough disruption" to warrant law enforcement involvement.

The resulting FBI investigation revealed that between November 27, 2014, and December 27, 2015, "Cain stalked and harassed L.H. via telephone calls and text messages, some of which contained threats to injure L.H. and her immediate family members." At all relevant times, Cain resided outside of Maine and sent the messages through a "facility of interstate commerce, namely a telephone."

Initially, Cain called L.H. approximately 25 times per day. When L.H. refused to answer Cain's communications and changed her phone number and email address, Cain would instead harass her mother, sister, and ex-husband.

On December 13, 2014, L.H. recorded a call from Cain in which he said:

> I'm going to get rid of your mother . . . if
> I have to drive f***ing all the way over there
> and shoot her in the f***ing head myself, I'm
> going to get rid of her because I don't like
> that b****.

That same day, Cain texted L.H. a video depicting him sitting in a vehicle, holding a gun to his head, and threatening to kill himself. Concerned, L.H. asked that the San Antonio Police Department conduct a wellbeing check on Cain. During the check, Cain admitted that he sent the video to L.H. "to get a rise out of her" and compel her to visit him. He further admitted to sending a similar video two or three weeks prior.

On February 12, 2015, L.H. went to the Houlton Police Department to complain about Cain's harassment. While L.H. was at the police station, Cain called her several times. An officer answered a few of these calls and warned Cain to leave L.H. alone, but he ignored those warnings. During one of these calls, the caller ID function on L.H.'s phone identified the call as coming from the Houlton Police Department itself. An officer answered that call on speaker phone, and he and L.H. both identified Cain

as the caller. This was one of multiple occasions where Cain called L.H. using "spoofing" technology.[1]

Thereafter, on March 3, 2015, L.H. obtained a temporary protection-from-harassment order. Then, apparently on the same day (although the record is not entirely clear), the Houlton Police Department obtained a warrant for Cain's arrest for telephone harassment, and he was in fact arrested in Houlton and personally served the protection order on March 4, 2015. A final protection order was issued on April 6, 2015.

Despite the protection order, Cain escalated his threats against L.H. Soon, he was calling, texting, or emailing her over 100 times per day. On June 5, 2015, alone, Cain sent L.H. 122 text messages and made 100 phone calls. In these communications, Cain frequently threatened to kill L.H. and encouraged her to commit suicide. He also threatened to rape L.H. and rape and murder her family members, claiming that he could have members of the motorcycle gang Hell's Angels commit those crimes.

Cain further accused L.H. of promiscuity and called her vulgar names such as "whore," "bitch," and "pigf***er." He utilized a cellphone application to track L.H.'s location and sent her messages referencing places she had been, insinuating that she

---

[1] Caller ID "spoofing" is the practice of changing the caller's phone number to any number other than the actual calling number.

was being surveilled.  In addition, on several occasions between July and September 2015, Cain sent L.H. videos of the two of them having consensual sex that were recorded without her permission. He threatened to distribute the videos if L.H. would not return his calls immediately.  And, in even more macabre fashion, he also sent L.H. what appeared to be her own obituary designed for publication in a local newspaper.

Cain was ultimately arrested on federal stalking charges on January 21, 2016.  Although he was released on bail, he was later cited in Nevada for driving under the influence of alcohol on April 19, 2018.  He was subsequently arrested on May 8, 2018, for violating one of the conditions of bail -- namely, that he refrain from consuming alcohol.

## II.  Procedural Background

On August 9, 2016, Cain was indicted on three counts. Count One charged him with stalking in violation of 18 U.S.C. § 2261A(2)(B), and Counts Two and Three charged him with transmitting threatening communications in interstate commerce in violation of 18 U.S.C. § 875(c).

On January 9, 2018, Cain pleaded guilty to Count One pursuant to a plea agreement.  In exchange, the government agreed to dismiss Counts Two and Three and to recommend a sentence at the low end of the applicable Guidelines range.  According to the PSR, Cain's base offense level was 18, which was increased four levels

pursuant to U.S.S.G. § 2A6.2(b)(1) due to the presence of three aggravating factors: violation of a court protection order, threatened use of a dangerous weapon, and engaging in a pattern of activity involving stalking, threatening, and harassing the victim. Probation recommended an additional two-level increase for obstruction of justice due to the magistrate judge finding Cain's testimony not credible at a prior suppression hearing. Finally, probation suggested that a reduction pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility was not warranted, yielding a total offense level of 24.

At sentencing, the district court declined to apply the two-level increase for obstruction of justice. The court further reduced the offense level by three for acceptance of responsibility, yielding a final offense level of 19. Cain's Criminal History Category was determined to be I, resulting in a Guidelines range of 30 to 37 months.[2]

Pursuant to the plea agreement, the Government requested a sentence of 30 months. Defense counsel, noting Cain's work ethic, support from his family, and lack of criminal history, requested a sentence "far below the 30 months that the government ha[d] recommended."

---

[2] Probation, by contrast, had recommended a total offense level of 24, which corresponds to a Guidelines range of 51 to 63 months.

The district court then addressed the sentencing factors enumerated in 18 U.S.C. § 3553(a). It began by discussing Cain's steady work history, family ties, and minimal criminal history. However, the court observed that Cain had waged "an unrelenting and vicious campaign of harassment against L.H." that lasted thirteen months. Even taking into account that the unraveling of a relationship can be contentious, Cain's conduct amounted to "a constant and deliberate psychological torture." The court noted that Cain had unleashed a constant barrage of emails, texts, and calls, in which he repeatedly threatened to harm L.H. and her family, in defiance of a court protection order. The court continued, stating that Cain's crime was far removed from "an average stalking crime, if there is such a thing," and that it had "never seen a stalking crime of such length, such intensity, such vulgarity, such scope, such sophistication, such impact." Ultimately, the court concluded that Cain's conduct passed from the realm of stalking into "domestic terrorism." Weighing these factors, the district court imposed the statutory maximum sentence of 60 months. See 18 U.S.C. § 2261(b)(5). This timely appeal followed.

**III. Analysis**

On appeal, Cain only challenges the substantive reasonableness of his sentence, arguing that the imposition of the statutory maximum was indefensible given his positive attributes

- 8 -

and minimal criminal history.[3]  He also notes that because the court imposed the maximum sentence, he "received no benefit from having pled guilty."  At his sentencing, Cain made no objection to the length of his sentence.[4]

"In reviewing the [substantive] reasonableness of a sentence outside the Guidelines range, appellate courts may . . . take the degree of variance into account and consider the extent of a deviation from the Guidelines."  Gall v. United States, 552 U.S. 38, 47 (2007).  "Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court [] review[s] the sentence under an abuse-of-discretion standard."  Id. at 51.  "Although the standard of review for unpreserved challenges to the substantive reasonableness of a sentence remains unclear," even in the event of a preserved challenge "an appellate court only reverses where the sentence is outside of the expansive universe of reasonable sentences."  Severino-Pacheco, 911 F.3d at 21 (internal quotation marks, alterations, and citations omitted).

---

[3]  The plea agreement also included a waiver of appeal. However, because Cain only waived his right to appeal "[a] sentence of imprisonment that does not exceed 37 months," the waiver is inapplicable here.

[4]  "The Supreme Court recently granted certiorari on the question of whether a formal objection after pronouncement of sentence is necessary to invoke appellate reasonableness review of the length of a defendant's sentence."  United States v. Reyes-Gomez, No. 17-1757, 2019 WL 2428448, at *2 n.3 (1st Cir. June 11, 2019) (internal quotation marks, alteration, and citation omitted).

"[T]he linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008) (citing United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc), abrogated by Rita v. United States, 551 U.S. 338 (2007)).

Cain's argument fails this highly deferential standard of review, as "we have scant difficulty concluding that the defendant's above-the-range sentence 'served the objectives of sentencing.'" United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014) (alteration omitted) (quoting Kimbrough v. United States, 552 U.S. 85, 91 (2007)). As the district court noted, Cain embarked on a relentless thirteen-month stalking campaign. He threatened to brutally rape and murder the victim and her family members, often in graphic terms. The cumulative effect of the many thousands of texts, phone calls, and emails Cain sent caused L.H. to live a life of constant paranoia and fear. To be sure, there were mitigating factors, including Cain's decision to plead guilty, which protected L.H. from having to testify at trial. However, "a defendant does not ensure himself a reduced sentence simply by identifying potentially mitigating factors." United States v. Madera-Ortiz, 637 F.3d 26, 32 (1st Cir. 2011) (citing United States v. Carrasco-de-Jesús, 589 F.3d 22, 29 (1st Cir. 2009)). An experienced jurist ultimately decided that the egregious details of Cain's crime warranted the statutory maximum

sentence. While some might deem that sentence harsh, that is the type of judgment call we have repeatedly stated is within the sound discretion of the sentencing court. See id., 637 F.3d at 32 (citing United States v. Stone, 575 F.3d 83, 97 (1st Cir. 2009)).

Finally, we briefly address Cain's argument that his sentence was disproportionate to sentences imposed in other stalking cases. For example, he notes that in United States v. Sayer, 748 F.3d 425, 436-37 (1st Cir. 2014), we affirmed a district court's imposition of the statutory-maximum sixty-month sentence where the defendant stalked his victim for a much longer period of time -- four years.[5] Similarly, in United States v. Humphries, No. 12-cr-347-RWS, 2013 WL 5797116, at *6 (S.D.N.Y. Oct. 28, 2013), the district court imposed a below-Guidelines thirty-month sentence on a defendant who stalked his victim for three years and was convicted at trial. However, Cain's reliance on these cases is misplaced. We recently cautioned that sentences in other cases and jurisdictions do not establish a baseline for substantive reasonableness. See United States v. Ríos-Rivera, 913 F.3d 38, 46 (1st Cir. 2019). Again, the core of our analysis is whether the

---

[5] Cain further contends that the defendant's conduct in Sayer was more egregious because that defendant physically stalked the victim and created fraudulent advertisements in the victim's name that solicited sexual encounters from strangers. Therefore, Cain reasons his sentence should be lower. We do not find Sayer a helpful comparison. As the district court observed, Cain sent thousands of threats, and many of them were highly violent in nature.

- 11 -

sentencing court has posited a "plausible sentencing rationale and a defensible result." Santiago-Rivera, 744 F.3d at 234 (internal quotation marks and citation omitted). "[I]t is not a basis for reversal that we, if sitting as a court of first instance, would have sentenced the defendant differently." Martin, 520 F.3d at 92. Because the district court articulated a "plausible rationale and a defensible result," we cannot say its imposition of the statutory-maximum sentence was an abuse of discretion.[6]

### IV. Conclusion

For the foregoing reasons, the district court's sentence is AFFIRMED.

---

[6] In his brief, Cain also states "it is noteworthy that the calculated [Guidelines] range already included enhancements of the type that appeared to motivate the harshness of the District Court's sentence." To the extent this constitutes an argument, it is waived for lack of developed argumentation. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Even if this contention were not waived, it would not affect our analysis.