# United States Court of Appeals
## For the First Circuit

No. 08-1216

UNITED STATES OF AMERICA,

Appellee,

v.

JAMEEL GIBBONS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard, Circuit Judge,
and Garcia-Gregory,* District Judge.

James M. Fraser with whom Mark W. Pearlstein and McDermott Will & Emery LLP were on brief for appellant.
John A. Wortmann Jr., Assistant U.S. Attorney, with whom Michael J. Sullivan, U.S. Attorney, was on brief for appellee.

January 16, 2009

---

* Of the District of Puerto Rico, sitting by designation.

**LYNCH, <u>Chief Judge</u>.** Defendant Jameel Gibbons challenges a sentence of ninety-two months' incarceration imposed on him after he pled guilty to four crack cocaine offenses. Gibbons argues that the district court miscalculated his criminal history category ("CHC") and, consequently, his Guidelines sentencing range ("GSR") by improperly assigning him criminal history points for two prior juvenile offenses. That argument involves consideration of the latitude given to federal trial judges to interpret state criminal and juvenile records.

Gibbons also asserts that the district court misunderstood its authority to vary from the GSR in light of the sentencing disparity between crack and powder cocaine under <u>Kimbrough</u> v. <u>United States</u>, 128 S. Ct. 558 (2007). And finally Gibbons contests the substantive reasonableness of his sentence because, in his view, the district court did not properly account for the crack/powder sentencing disparity or his history of mental illness under the sentencing factors listed in 18 U.S.C. § 3553(a). These arguments are not supported by the record. We affirm his sentence.

I.

The Bromley-Heath public housing project, operated by the Boston Housing Authority ("BHA"), serves Boston's low-income population in need of affordable housing. In early 2006, Bromley-Heath had an extremely high rate of drug offenses, violent crimes,

-2-

firearm incidents, fatal shootings, and sexual assaults. Indeed, one Bromley-Heath building, 279 Centre Street, was one of ten "red zones" designated by the City of Boston -- a red zone is a hot spot where a number of shootings have occurred. The FBI and the Boston Police Department ("BPD") worked together to fight crime in the project, trying, among other things, to reduce drug trafficking and the violent crime it breeds. Despite the crime, Bromley-Heath had a long waiting list of people hoping to live there.

Jameel Gibbons was well known to the BHA; he was under a no trespass order issued in August 2005, excluding him from Bromley-Heath and all other BHA projects. Yet Gibbons continued to return to Bromley-Heath. Indeed, he was arrested for trespassing at Bromley-Heath on the day after the order had issued. And in September 2005, less than three weeks after the issuance of the order, he was shot eight times at Bromley-Heath.

On February 8, 2006, DEA agents attempted to purchase heroin from Gibbons, who was inside Bromley-Heath, as part of an investigation unrelated to the FBI/BPD operation. Gibbons fled before completing the sale, but DEA agents arrested him just outside of the project and found him in possession of 3.15 grams of crack cocaine, packaged into twenty-four bags. Later, the FBI/BPD operation in Bromley-Heath wired a cooperating witness ("CW"), who recorded his drug transactions with Gibbons. Gibbons made separate deliveries of crack cocaine to the CW on three dates in April 2006,

either inside the project or within 1000 feet of it. All of these sales were recorded, and the total amount of crack cocaine involved in those three sales was 4.91 grams.

On May 17, 2006, a grand jury indicted Gibbons on one count of possession of crack cocaine with intent to distribute and three counts of distribution of crack cocaine, all in violation of 18 U.S.C. § 841(a)(1). The indictment charged that each offense took place within 1000 feet of a public housing project, in violation of 21 U.S.C. § 860. On September 21, 2007, Gibbons pled guilty to all four counts.

These crimes were not Gibbons's first. At the time of his federal sentencing, his criminal history included ten prior state convictions, at least seven of which were for violent offenses. Since age thirteen, he had been under some form of judicial supervision for all but 103 days. Even when under judicial supervision, Gibbons had not curbed his criminal conduct; many of his crimes occurred while he was on probation or pretrial release. Moreover, the prosecution submitted to the district court more than forty pages of disciplinary records about Gibbons's behavior while in custody.

The district court made three things clear at the outset of Gibbons's sentencing hearing on January 16, 2008. First, it recognized that Gibbons's counsel could argue that "the distinction between crack and powder cocaine[] warrants yet a further reduction

in the sentence" under Kimbrough.  The Supreme Court had decided Kimbrough a little more than a month before Gibbons's sentencing. Second, the court acknowledged that many of Gibbons's arguments could be treated both as departures under specific guideline provisions, such as U.S.S.G. § 5K2.13, and as variances under the sentencing factors included in 18 U.S.C. § 3553(a).  Third, it stated that its determination of Gibbons's CHC would not likely impact his sentence because the ninety-two month sentence recommended by the government was at the low end of the GSR for CHC VI and in the middle of the GSR for CHC V.

The district court then considered the proper scoring of Gibbons's criminal history as to three prior juvenile offenses, described in paragraphs 57 through 59 of the presentence report ("PSR").  The primary issue on appeal is whether the court erred in its calculation of Gibbons's prior juvenile criminal history under U.S.S.G. § 4A1.2(d)(2)(A).  The first juvenile offense was an armed assault with intent to kill and an assault and battery with a dangerous weapon, which occurred on June 18, 2000 when Gibbons was fifteen years old.  Gibbons was adjudicated a youthful offender for that offense on August 31, 2000 and was committed to the Massachusetts Department of Youth Services ("DYS") custody until August 28, 2002, when he was transferred to adult custody until December 29, 2003.

The second juvenile offense, an assault and battery and threats to commit murder, occurred on April 3, 2001 when Gibbons was sixteen years old. Gibbons was adjudicated a delinquent for that offense on June 14, 2001. Gibbons was then already in DYS custody, and DYS records indicate that he was transferred to a different secure facility on the same day as his adjudication of delinquency for that offense.

The third offense was an assault and battery -- originally charged as an assault and battery on a corrections officer -- which occurred on November 26, 2001 while he was in DYS custody. Gibbons was sixteen years old at the time. He was adjudicated a delinquent for that offense on January 22, 2002. In addition to remaining in DYS -- and later adult -- custody, DYS records state that Gibbons received counseling following his adjudication of delinquency for that offense.

Under U.S.S.G. § 4A1.2(d)(2)(A), a criminal defendant receives two criminal history points "for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense." Gibbons argued to the district court that because his juvenile records were unclear about whether his actual term of confinement was at least sixty days for the second and third offenses described above (as he was already in custody), he should receive, at most, one criminal history point

for each offense.  See id. § 4A1.2(d)(2)(B) (scoring one point "for each adult or juvenile sentence . . . not covered in (A)").

The district court concluded that Gibbons had received at least sixty days' confinement for each of the three offenses described in paragraphs 57 through 59 of the PSR and awarded him two criminal history points for each.  In making this finding, the court was well aware that the burden was on the government to show that Gibbons's juvenile offenses were punished by at least sixty days confinement.  See, e.g., United States v. Brown, 510 F.3d 57, 74-75 (1st Cir. 2007).

In total, the district court gave Gibbons thirteen criminal history points, which put him into CHC VI with a GSR of 92 to 115 months.  The district court also found that CHC VI did not "overstate the seriousness" of Gibbons's criminal history.  The court told Gibbons:

> Your juvenile offenses and those committed since you have been an adult are horrendous crimes, and they deserve to be punished and to be scored as the guidelines have scored them. There is no justification, in this Court's opinion, for deeming that they in some way -- or that Category VI in some way overstates the seriousness of your criminal past.  If anything, your criminal past deserves a longer penalty than the one I am going to impose, but in any event, it does not deserve a shorter one.

The district court also considered and rejected Gibbons's argument that it should vary downward from the GSR in light of the crack/powder sentencing disparity, saying:

-7-

With respect to the problem of the distinction between crack and powder cocaine, the Court agrees with the government's suggestion, that notwithstanding all of the recent activity and the change of the statute back in 2007 which shortens the amount of time that crack cocaine criminals are subject to, it is still the understanding of the Sentencing Commission and of Congress itself -- which, of course, has the right in the ultimate end to change the statute if they believe that it is inappropriate to consider the crack and the powder cocaine discrepancy one that needs to be amended. It is not for this Court to legislate that.

The Supreme Court has ruled properly in connection with how the Court is to look at these distinctions, but it has not instructed this Court that it needs to discount completely the statutory enactment which attributes to crack cocaine a greater seriousness than to powder cocaine. Therefore, the Court does not attribute to the recent decision in <u>Kimbrough</u> any lessons for the sentence in this case.

Additionally, the district court addressed Gibbons's request for a downward departure on the basis of his diminished capacity under U.S.S.G. § 5K2.13, which was based on an opinion letter from forensic psychologist Dr. John Daignault that described Gibbons's history of mental illness. The court did not attribute great weight to Dr. Daignault's evaluation because his examination of Gibbons was very brief and his assessment did not "instruct [the court] with respect to the facts that are prevalent from the written record before [it]." The court denied Gibbons's request for a downward departure under U.S.S.G. § 5K2.13, saying:

I do not believe that you are of diminished capacity. I believe that you know what you're

doing.  You know what right and wrong is.  And you have the ability to act on that knowledge.  And you will have the ability to act on that knowledge when you get out of prison.

Finally, the court considered the sentencing factors under 18 U.S.C. § 3553(a), including Gibbons's arguments in favor of varying downward in light of the crack/powder sentencing disparity and his history of mental illness.  Defense counsel argued eloquently that Gibbons was disadvantaged from the start, growing up in a home where both parents were drug addicts and repeatedly incarcerated, and where Gibbons had seen his father beat his mother.  Gibbons had received psychiatric care since he was eight years old.  He had abused marijuana and alcohol even before he was a teenager and was addicted to cocaine in 2005.  His few federal offenses, for which he was being sentenced, netted him all of $700, which he had used to live on and to pay for his own cocaine habit.

The government countered by pointing out that Gibbons chose to sell crack cocaine, not powder, because crack was more addictive and cheaper.  There was a strong correlation between the ravaging of Bromley-Heath and the crack dealing that occurred there.  Further, Gibbons's criminal activity started when he was thirteen years old and had been continuous since.

Gibbons declined to address the court himself.  After hearing these arguments, the district court denied Gibbons's request for a downward variance because it viewed a sentence within

the GSR as "eminently fair . . . under the circumstances . . . having considered all of the written materials and the oral arguments of counsel."  The district court sentenced Gibbons to ninety-two months in prison followed by seventy-two months of supervised release, a sentence recommended by the government at the low end of the GSR.  Gibbons had requested forty-eight months in prison followed by seventy-two months of supervised release.  The district court noted that Gibbons's sentencing occurred on his twenty-third birthday and expressed its hope that Gibbons would reflect on his situation and turn his life around.

II.

Gibbons's first argument is that the court erred in the scoring of the juvenile convictions described in paragraphs 57 through 59 of the PSR by concluding that Gibbons had received sentences of confinement for sixty days or more for each of those crimes.

The parties disagree over the standard of review. Gibbons argues that our review of this issue is de novo, quoting United States v. Ramos-Paulino, 488 F.3d 459, 463 (1st Cir. 2007) ("A question about whether the evidence is sufficient to support a particular guideline determination is a question of law and, therefore, engenders de novo review.").  Gibbons misunderstands Ramos-Paulino, which was concerned not with disputed factual findings but with whether the facts found permitted a conclusion

that a defendant was "an organizer, leader, manager, or supervisor" under U.S.S.G. § 3B1.1(c). Indeed, in Ramos-Paulino the problem was that the district court had failed to make any factual findings at all in support of its conclusions. Ramos-Paulino, 488 F.3d at 464.

Gibbons's argument is different in kind from the argument in Ramos-Paulino. His argument is that the court's factual findings that his juvenile offenses were punished by more than sixty days of confinement each did not have sufficient evidentiary support. We review this type of fact-bound challenge for clear error. See, e.g., United States v. Dixon, 449 F.3d 194, 200 (1st Cir. 2006). Gibbons cannot show clear error; he cannot show error at all.

Federal sentencing courts must do the best they can when drawing conclusions from state court records that were not designed with the federal Sentencing Guidelines in mind. This is particularly true of state juvenile records. In Massachusetts, for example, a juvenile court may commit a child adjudicated as a delinquent to DYS custody without specifying a particular term of confinement. See Mass. Gen. Laws ch. 119, § 58. DYS then determines the placement appropriate for each offender, which could range from parental release to confinement at a secure facility.

The district court considered Gibbons's juvenile records and concluded that he had received sentences of sixty days or more

-11-

of confinement for each of the offenses described in paragraphs 57 to 59 of the PSR. Gibbons wisely does not contest that he should have received two points for the first offense described in paragraph 57 of the PSR. DYS records show that he began a sentence of confinement exceeding sixty days following his arraignment for that offense on June 28, 2000.

With respect to the second and third offenses described in paragraphs 58 and 59, the record is less clear as to the length of the sentences that Gibbons received. His juvenile records state that he was a "committed juvenile" both from June 14, 2001 until December 29, 2003 for the offense described in paragraph 58 and from January 22, 2002 until December 29, 2003 for the offense described in paragraph 59.[1] These notations support a determination that he received concurrent or overlapping sentences for the offenses described in paragraphs 58 and 59 of the PSR. DYS records also show that Gibbons was held at secure juvenile facilities, and later at an adult jail, for periods exceeding sixty days following his adjudication of delinquency for those offenses.

Moreover, Gibbons's juvenile records show that although he was already in DYS custody at the time of his adjudication on

---

[1] Gibbons argues that his juvenile record shows that he received only counseling for the offense listed in paragraph 59. But his juvenile record states that he was held at various secure juvenile facilities, as well as at an adult jail, following his adjudication of delinquency for that offense. It seems likely that Gibbons received counseling in addition to a sentence to confinement for the offense listed in paragraph 59.

the second offense, he was transferred to a different secure facility on June 14, 2001. This date matches the date of his adjudication of delinquency for the offense listed in paragraph 58 and indicates that his confinement following that date was, at least in part, punishment for that crime.

And finally, Gibbons's juvenile crimes were very serious; both were assault and battery offenses, and one was with a threat to commit murder. It is unlikely that Gibbons would have received less than sixty days' confinement for those crimes, given their violent nature. The district court's calculation of Gibbons's CHC and, consequently, his GSR was correct.[2]

Gibbons next argues that the district court misunderstood its authority under Kimbrough to vary downward from the GSR based upon the crack/powder sentencing disparity. Gibbons preserved this issue for appeal,[3] and our review is de novo. See United States v. Saldana, 109 F.3d 100, 103 (1st Cir. 1997).

_____

[2] We need not consider the government's alternative argument that even if the district court erroneously placed Gibbons in CHC VI, the error was harmless because he received a sentence that overlapped with the GSR for CHC V.

[3] The government argues that Gibbons forfeited this argument by failing to object contemporaneously to the district court's statements. But here, Gibbons consistently argued before the district court that it could vary downward from the GSR under Kimbrough based upon the crack/powder sentencing disparity. He was not required to make a formal objection after the district court's ruling to preserve the issue for appeal. Cf. United States v. Gallant, 306 F.3d 1181, 1188-89 (1st Cir. 2002).

Of course, "nothing in Kimbrough requires the district court to take [the crack/powder sentencing] disparity into account in every crack case." United States v. Díaz-Fontánez, No. 06-2061, 2008 WL 3188152, at *2 (1st Cir. Aug. 8, 2008) (per curiam) (citing United States v. King, 518 F.3d 571, 576 (8th Cir. 2008)). Thus, the mere fact that the district court chose not to vary from the GSR based upon the crack/powder sentencing disparity is, by itself, not a basis for vacating Gibbons's sentence. But if the district court chose not to account for the crack/powder disparity based upon a mistaken belief that the Guidelines on this issue are mandatory, that would constitute a "significant procedural error," Gall v. United States, 128 S. Ct. 586, 597 (2007), requiring that we remand for resentencing, see, e.g., United States v. Lipscomb, 539 F.3d 32, 43 (1st Cir. 2008).

Here, the district court was well aware of Kimbrough and properly understood its authority, saying:

> The Supreme Court has ruled properly in connection with how the Court is to look at these distinctions, but it has not instructed this Court that it needs to discount completely the statutory enactment which attributes to crack cocaine a greater seriousness than to powder cocaine. Therefore, the Court does not attribute to the recent decision in Kimbrough any lessons for the sentence in this case.

The district court chose not to vary from the GSR because it felt that Gibbons "deserve[d] a lengthy prison sentence" in light of the harm that his crack dealing had caused in the public

-14-

housing project. It considered a sentence within the GSR "eminently fair . . . under the circumstances . . . having considered the written material and the oral arguments of counsel." This case is distinguishable from the one Gibbons cites, United States v. Burns, 526 F.3d 852, 861 (5th Cir. 2008), where, in response to a defendant's request for a downward variance on the basis of the crack/powder sentencing disparity, the district court said: "The Court finds it has no -- limited discretion, if any. And if I do have discretion, I exercise my discretion not to downwardly depart on that basis."

Finally, Gibbons challenges the substantive reasonableness of his sentence, arguing that the district court gave inadequate weight to the crack/powder sentencing disparity and his history of mental illness[4] when considering the sentencing

---

[4] Gibbons argues that the district court erred by considering his mental illness arguments only in the context of his request for a departure under U.S.S.G. § 5K2.13 and not separately under the sentencing factors in 18 U.S.C. § 3553(a). The record does not support this claim. At the outset of the sentencing hearing, the district court stated: "With respect to the downward departure issues and the 3553 issues, I will certainly hear counsel. I have read and carefully considered all of the arguments that have been made by both parties in anticipation for this sentencing." Just before pronouncing its sentence, the district court denied Gibbons's requests to vary from the GSR, saying: "I believe the guideline sentence is an eminently fair one under the circumstances that I find myself in today and having considered all of the written material and the oral arguments of counsel before me today." Gibbons argued in his sentencing memorandum that the district court should vary from the GSR under 18 U.S.C. § 3553(a) in light of his history of mental illness. The district court's comments demonstrate that it considered and rejected Gibbons's request for a downward variance on that basis.

factors in 18 U.S.C. § 3553(a). We review the substantive reasonableness of Gibbons's sentence under an abuse of discretion standard, considering the totality of the circumstances. Gall, 128 S. Ct. at 597; see also United States v. Russell, 537 F.3d 6, 13 (1st Cir. 2008).

The sentence was substantively reasonable. Gibbons's offenses were serious drug crimes committed in and around a public housing project. Gibbons, although age twenty-one at the time of his federal offenses, had a lengthy and violent criminal history. He had been warned to stay away from the Bromley-Heath project and nonetheless ignored the warning. We will not disturb a well-reasoned decision to give greater weight to particular sentencing factors over others, see, e.g., United States v. Deppe, 509 F.3d 54, 62 (1st Cir. 2007), and the district court was well within its discretion to sentence Gibbons to ninety-two months' imprisonment, a sentence at the low end of the GSR.

### III.

The sentence is affirmed.