# United States Court of Appeals
## For the First Circuit

No. 18-2155

UNITED STATES OF AMERICA,

Appellee,

v.

JOSHUA GONZÁLEZ-ANDINO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Kayatta, Howard, and Gelpí,
Circuit Judges.

German A. Rieckehoff for appellant.
Julia M. Meconiates, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, were on brief,
for appellee.

January 26, 2023

**HOWARD**, **Circuit Judge**.    Joshua González-Andino challenges the district court's imposition of a 78-month term of imprisonment after he pleaded guilty to possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).    We affirm the sentence, finding that González failed to preserve the arguments he presents on appeal and that the district court committed no plain sentencing error.

## I.

We briefly summarize the factual background and procedural history of González's case.    "Because [González pleaded] guilty, we draw the relevant facts from the change-of-plea colloquy, the unchallenged portions of the Presentence Investigation Report ('PSR'), and the sentencing hearing transcript."  United States v. Díaz-Rivera, 957 F.3d 20, 22 (1st Cir. 2020).    Puerto Rico police officers arrested González and three other individuals in an apartment at a public housing complex in Manatí after they found multiple types of drugs, guns, ammunition, paraphernalia, and cash while executing a search warrant.    A federal grand jury indicted the codefendants on four counts of possession with intent to distribute controlled substances and one count of possession of firearms in furtherance of a drug trafficking crime.    As noted above, González later

- 2 -

pleaded guilty to two of the five counts. Most relevantly to this appeal, the plea agreement that González reached with the government stipulated the sentence that each party would propose to the district court. For the firearm possession in furtherance of drug trafficking count, González and the government agreed to recommend the statutory minimum sentence of 60 months of imprisonment. For the possession with intent to distribute count, González and the government agreed that they would separately recommend sentences of zero and six months of imprisonment, respectively. González also agreed to waive his appeal rights if the district court sentenced him to no more than a total of 66 months of imprisonment for both counts.

The crux of this appeal lies in the discrepancy between the drug quantities specified in the plea agreement and the PSR. In his plea agreement, González acknowledged that he possessed with the intent to distribute 87.23 grams of marijuana. However, the PSR calculated his Sentencing Guidelines range based on a converted quantity of 39.2 kilograms of marijuana, which was the equivalent of all the various drugs seized from the apartment in which González and his three codefendants were arrested. The district court adopted the PSR's drug quantity in sentencing González to a total of 78 months of imprisonment, including 18 months for the drug possession count. While this sentence fell within the Guidelines range calculated in the PSR, it exceeded the

sentencing cap provided in the plea agreement.  Thus, the appeal-waiver provision did not vest, and González's petition to us followed.

## II.

González argues that the sentence imposed by the district court was procedurally unreasonable, and that the court erred by (1) failing to explicitly tie his conduct to the amount of drugs cited in the PSR and (2) relying on the PSR's drug quantity figure when this figure was not supported by the evidence.  But he advanced neither of these arguments with sufficient particularity before the district court so as to preserve them.  It is well-settled in this court that "[t]o preserve a claim of error for appellate review, an objection must be sufficiently specific to call the district court's attention to the asserted error." United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017). "[L]egal arguments cannot be interchanged at will" on appeal, United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir. 2011) (citing United States v. Lilly, 13 F.3d 15, 17-18 & n.6 (1st Cir. 1994)), and an objection that "d[oes] not allude to, or even mention, the specific claim of error" that the defendant proffers on appeal will not suffice, United States v. Matos-de-Jesús, 856 F.3d 174, 177 (1st Cir. 2017).

González did not present to the district court the arguments that he now advances before us.  He did not object to

the PSR's findings, despite having had two opportunities to do so. Cf. United States v. Orsini, 907 F.3d 115, 120 (1st Cir. 2018) ("[A] defendant who 'accepts the probation department's configuration of the sentencing record . . . can scarcely be heard to complain when the sentencing court uses those facts in making its findings.'" (quoting United States v. Turbides-Leonardo, 468 F.3d 34, 38 (1st Cir. 2006))). And, while he did tell the district court immediately after sentencing that he "must object to the inclusion of the drugs," since he "only pled to the marijuana found in the apartment," we are hard-pressed to conclude that this general statement alone alerted the district court to specific arguments about the PSR drug quantity's ostensible evidentiary infirmity or that the court should have made an individualized finding linking the drug amount to González's conduct.[1] We have routinely deemed arguments like González's forfeited when the underlying record evinced only generalized objections or those made on notably different bases than the defendant's subsequent appellate arguments. See, e.g., Soto-Soto, 855 F.3d at 448, 448

---

[1] During sentencing, the district court incorrectly stated that González was "convicted of possession of at least 20 but less than 40 kilograms of marijuana, after the other controlled substances were converted into marijuana for sentencing purposes." González's objection that he "only pled to the marijuana found in the apartment" would have preserved a procedural challenge based upon the court's misstatement. But González does not argue on appeal that the district court erroneously relied upon the higher drug quantity due to a mistaken belief that he had pleaded to that quantity.

n.1 (noting that the defendant's argument that his sentence was "procedurally . . . unreasonable" did not preserve his argument on appeal that the district court committed procedural error when it allegedly mischaracterized the case history); Ríos-Hernández, 645 F.3d at 462 (concluding that the defendant's argument to the district court was "sufficiently different" from his appellate argument so as to be forfeited). González does not make any attempt in his principal brief to persuade us that we should treat his objections differently, and he did not file a reply brief in response to the government's forfeiture argument.

## III.

We review unpreserved arguments for plain error. "[T]he plain error hurdle is high." United States v. Merced-García, 24 F.4th 76, 79 (1st Cir. 2022) (quoting United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989)). Under this standard, González must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. at 79-80 (alteration in original) (quoting United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001)).

As an initial matter, González waived his arguments on appeal by "not even attempt[ing] to meet his four-part burden for forfeited claims" under the plain-error standard. United States

v. Pabon, 819 F.3d 26, 33 (1st Cir. 2016).  The district court, in any event, committed no clear or obvious error with respect to either one of González's claims.  Both of his claims implicate the district court's application of our case law interpreting "relevant conduct" under U.S.S.G. §1B1.3 in the context of drug-quantity attributions; or, more specifically, the contention that "[i]f the sentencing court finds by a preponderance of the evidence that a defendant engaged in the 'same course of conduct or common scheme or plan' involving additional drugs, it can attribute the amount of those drugs involved to the defendant."  United States v. McDonald, 804 F.3d 497, 502-503 (1st Cir. 2015) (citation omitted) (quoting U.S.S.G. §1B1.3(a)(2)).  A district court's attribution of drugs to a defendant under §1B1.3 "is entitled to considerable deference."  Id. (quoting United States v. Wood, 924 F.2d 399, 403 (1st Cir. 1991)).

**A.**

González claims that the evidence does not support a common scheme such that the district court could properly attribute the larger PSR drug quantity to him because "[t]here was no evidence that he was part of a larger drug enterprise" and "[t]here was no evidence that the drugs were his or that they belonged to anyone with whom he was in business."  The plain-error bar for challenging a district court's factual findings is especially high:  "[I]f an error pressed by the appellant turns on 'a factual

- 7 -

finding [he] neglected to ask the district court to make, the error cannot be clear or obvious unless' he shows that 'the desired factual finding is the only one rationally supported by the record below.'" United States v. Takesian, 945 F.3d 553, 563 (1st Cir. 2019) (alterations in original) (quoting United States v. Olivier-Diaz, 13 F.3d 1, 5 (1st Cir. 1993)).

That is far from being the case here, since González's arguments are belied by his own statements to the district court. In arguing that the district court should factor in his drug addiction at sentencing, he stated that "[t]he record clearly reflects that the apartment in which the search warrant was executed was being used as a stash house" and -- by way of explaining his presence in the apartment -- that "[g]oing to the apartment would probably allow him to consume drugs if these were available, in exchange for him acting as a lookout or guard while the occupants rested in the adjacent rooms." It is difficult to reconcile González's argument to us that there was no evidence suggesting that he was involved in a larger criminal enterprise with his explicit statement to the district court that he was likely in the apartment in order to perform services for exactly such an enterprise.

The existence of a common scheme is further underscored by the fact that, according to the PSR -- to which, as noted above, González did not object -- local police located two loaded guns,

a brown bag filled with three types of drugs and associated paraphernalia, and $820 in cash in the room in which police found González. The police search of other rooms in the same apartment yielded more drugs, paraphernalia, cash, and ammunition. All of these items suggest the existence of a larger drug trafficking enterprise. Cf. United States v. Marin, 523 F.3d 24, 28 (1st Cir. 2008) (noting that a weapon, ammunition, drugs, paraphernalia, and cash all being stored in the same house was indicative of broader drug trafficking activity). We therefore find that the district court's imputation of all the drugs found in the apartment to González did not constitute clear or obvious error.

## B.

González also contends that the district court erred in not making a specific finding at sentencing that linked the total amount of drugs found in the apartment to either his personal conduct or conduct that was foreseeable to him. But González overlooks the fact that the court mentioned that he was "arrested along with three other individuals" shortly before it described the items found in González's vicinity, which clearly implies that the court factored in both the individual items police found in the apartment and the general context of his arrest in attributing to him the total amount seized. While "it would have been a better practice for the court to state its [drug-quantity attribution] finding explicitly," our precedent does not mandate a more

detailed, sua sponte statement of reasoning than what the district court proffered in the context of a PSR replete with unobjected-to details of a common enterprise. United States v. Millán-Machuca, 991 F.3d 7, 30-31, 31 n.13 (1st Cir. 2021) (upholding a district court's drug-attribution finding on plain-error review when "[t]he district court did not state [its drug-attribution finding] explicitly" but there was ample support for it in the record and the "finding [was] unmistakable in the court's explanation of its sentencing decision"); cf. United States v. Díaz-Lugo, 963 F.3d 145, 156 (1st Cir. 2020) ("[W]here the record permits a reviewing court to identify both a discrete aspect of an offender's conduct and a connection between that behavior and the aims of sentencing, the sentence is sufficiently explained to pass muster." (quoting United States v. Sepúlveda-Hernández, 817 F.3d 30, 33 (1st Cir. 2016))).

González's case is also markedly different from those in which we have found that a district court proffered an inadequate explanation for its drug-quantity attribution: The court did more than simply recite the "threshold quantities" under the Sentencing Guidelines without further elaboration, United States v. Vázquez-Larrauri, 778 F.3d 276, 291 (1st Cir. 2015), and it did not rely on a years-long, conspiracy-wide amount untethered from González's conduct, see United States v. González-Vélez, 466 F.3d 27, 31, 34, 38 (1st Cir. 2006), given that the PSR explicitly linked the amount

to the quantity found in the apartment in which González was arrested.  We thus discern no clear or obvious error with respect to the district court's drug-attribution finding.

**<u>Affirmed</u>**.