# United States Court of Appeals
## For the First Circuit

No. 22-1464

UNITED STATES OF AMERICA,

Appellee,

v.

DANIEL PAUL SANSONE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Gelpí, Circuit Judges.

Stephen P. Super on brief for appellant.
Darcie N. McElwee, United States Attorney, and Benjamin M.
Block, Assistant United States Attorney, on brief for appellee.

January 4, 2024

**SELYA**, **Circuit Judge**.  Defendant-appellant Daniel Paul Sansone challenges both the procedural integrity and substantive reasonableness of his top-of-the-range sentence.  His procedural challenges, though, are unpreserved and fail plain-error review.  That leaves his substantive challenge, which we review for abuse of discretion.  Discerning none, we affirm the defendant's sentence.

## I

We briefly rehearse the relevant facts and travel of the case.  "Where, as here, a sentencing appeal follows a guilty plea, we glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing."  United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

On October 15, 2020, law enforcement officers in Waterville, Maine, responded to a report of a gunshot near Poolers Parkway.  The report noted that "a suspicious male on a red motorcycle was observed in the area."  Upon arriving at the scene, the officers found the defendant standing next to a red motorcycle. When the officers asked the defendant to show them his hands, the defendant fled.  A foot-chase ensued.  The chase ended in the defendant's capture.

Once the defendant was in custody, a search of his person revealed a loaded ammunition magazine and a large amount of cash.

A backpack that the defendant discarded while running contained, among other things, 28.1 grams of marijuana. Following an inspection of the area covered by the foot-chase, the officers also found a loaded firearm with the safety selector switch in the "fire" position.

In an interview with law enforcement, the defendant said that he had traveled to Waterville to locate Zoe Hendricks, who shares a child with him. He added that Hendricks was subject to bail conditions, which prohibited her from having any contact with him. With respect to the firearm, the defendant insisted that he carried it with him — despite being a prohibited person[1] — because he believed that a drug dealer had a "hit on him." He also asserted that the firearm had discharged accidentally.

Further inquiry revealed that both the defendant and Hendricks were on bail following an arrest on April 30, 2020. That arrest resulted in charges of aggravated trafficking of scheduled drugs, carrying a concealed weapon, and violating a condition of release.

A review of the defendant's text messages and social media accounts disclosed that he had sent several messages to Hendricks on the night of October 15. A representative sampling of these messages follows:

---

[1] On October 6, 2020, the defendant was convicted in a Maine state court of unlawful trafficking in scheduled drugs.

- "I'm going to suicide by cop tonight."

- "Just do this the easy way so I don't have to go shooting up your families houses." "I'm taking someone close to you out with me."

- "Zoe, if you down [sic] answer, I'm going to shoot myself in the head." This message included a photo of the defendant with a gun to his head and his finger on the trigger.

- "I'm ready to die to night and I'll happily take you with me . . . ."

At the time of the incident, Hendricks lived close to where the gunshot was fired. Following the gunshot, the defendant messaged Hendricks, "I know you could hear that."

In due course, a federal grand jury sitting in the District of Maine returned an indictment that charged the defendant with being a felon in possession of a firearm. See 18 U.S.C. § 922(g)(1). Although the defendant initially maintained his innocence, he later pleaded guilty to this charge. After accepting the defendant's guilty plea, the district court ordered the preparation of a PSI Report. That report was submitted, and the probation office later substituted a revised PSI Report.[2]

---

[2] The revised PSI Report included an addendum, which confirmed that no objections to it had been received either from the defendant or from the government.

- 4 -

In the revised PSI Report, the probation office recommended a total offense level of seventeen, a criminal history score of eight, and a criminal history category (CHC) of IV. Of particular pertinence for present purposes, the criminal history score included four points stemming from two discrete adjudications in a Massachusetts juvenile court. The first two points related to a February 2015 charge of receiving stolen property; the second two points related to March 2015 charges of receiving stolen property and twice uttering counterfeit notes. The disposition for both sets of charges was identical: "Continued Without a Finding with Supervised Probation."

The defendant's release on probation for these two juvenile state-court adjudications was short-lived. After his second probation violation, he was "Committed" to the Massachusetts Department of Youth Services (DYS) on December 23, 2015. He was thereafter "Released to Community" on June 23, 2016. From that time forward, he was "In and Out of DYS Custody" and "Discharged from DYS" on October 26, 2017.

The revised PSI Report recommended a guideline sentencing range (GSR) of thirty-seven to forty-six months' imprisonment. Neither party challenged this calculation.

The district court convened the disposition hearing on June 1, 2022. The prosecutor described the defendant as "a master manipulator" and noted that, although "[t]he defendant is somebody

- 5 -

that unquestionably has had an extremely troubled and difficult childhood," that reality should not "explain away" the defendant's misconduct. The prosecutor further observed that the defendant had subjected Hendricks to "despair and terror" on October 15. Given this predicate, the prosecutor argued for "a sentence at the high end of the guideline range."

For his part, defense counsel introduced seven exhibits, including a psychological report, a letter from Hendricks, and a sheaf of other letters. He did not object to the inclusion of four points in the defendant's criminal history score based upon the defendant's juvenile adjudications. Wrapping up, defense counsel argued for a downwardly variant sentence, suggesting that the defendant's circumstances, particularly "the difficulty in his childhood," warranted "leniency." The court then heard testimony from the defendant's mother, Barbara Sansone, who discussed the defendant's entry into foster care, his childhood, and the "total attitude change" that she witnessed in the months following his most recent incarceration.

During his allocution, the defendant accepted responsibility for his actions, admitting that his "choices were foolish, lacked foresight, and created a recurring pattern that lasted for years." He concluded by requesting a downwardly variant sentence.

The court proceeded to adopt the revised PSI Report in its entirety (including the guideline calculations). It stated that — in fashioning an appropriate sentence — it had considered the parties' recommendations, the defendant's exhibits, his mother's testimony, and his allocution, as well as the sentencing factors limned in 18 U.S.C. § 3553(a). The court made clear its view that "the conduct underlying [the] offense is alarming in the extreme." It emphasized that the need to provide specific deterrence and protect the public from the defendant "scream out to me for me to be at least a stopgap" and to impose "a period of incarceration that's meaningful." And the court stated:

> I take no exception with the characterization that [defense counsel] presented in terms of your personal history and characteristics. You have had, to put it mildly, a challenging go in the few years that you've been on the planet. I get that. You're not the first person to appear before me who has struggled in a similar fashion. And I understand how hopelessly complex that can make life, and it can lead to resentment, bitterness, confusion, and extremely poor decisions. I get all of that.

In the end, the court determined that a forty-six-month term of immurement was "a just and fair sentence." This timely appeal followed.

## II

"Appellate review of claims of sentencing error entails a two-step pavane." United States v. Matos-de-Jesús, 856 F.3d

174, 177 (1st Cir. 2017). During this pavane, "we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011). Throughout, "our review of preserved claims of error is for abuse of discretion." United States v. Díaz-Lugo, 963 F.3d 145, 151 (1st Cir. 2020). Unpreserved claims of error, if not deemed waived, are reviewed only for plain error. See United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

In this venue, the defendant challenges both procedural and substantive aspects of his sentence. We address these challenges separately.

**A**

The defendant advances two related claims of procedural error. First, he argues that a juvenile adjudication of DYS commitment is not a sentence of confinement and, thus, not a lawful predicate for the assignment of criminal history points under USSG §4A1.2(d)(2)(A). Second, he argues that "there was no evidence on the record" to support the sentencing court's conclusion that both juvenile adjudications resulted in confinement of at least sixty days. Either way — he says — the sentencing court committed procedural error when it used the juvenile adjudications to boost his criminal history score (and, thus, increase his CHC).

- 8 -

**1**

We start with the argument that the defendant's criminal history score was erroneously inflated because a juvenile adjudication of DYS commitment is not a sentence of confinement. Because the defendant did not advance this argument below, our review is for plain error. See United States v. Serrano-Mercado, 784 F.3d 838, 844-45 (1st Cir. 2015); United States v. Vasco, 564 F.3d 12, 22 (1st Cir. 2009).

"The plain error hurdle is high." United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989). To prevail under plain-error review, a defendant must make "four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Duarte, 246 F.3d at 60. Moreover, "[a] party who claims plain error must carry the devoir of persuasion as to all four of these elements." United States v. Pinkham, 896 F.3d 133, 136-37 (1st Cir. 2018). The defendant cannot make this uphill climb.

Our analysis begins with the text of the relevant guideline. See United States v. DiPina, 178 F.3d 68, 71 (1st Cir. 1999). USSG §4A1.2(d)(2)(A) directs that two criminal history points are to be added to a defendant's criminal history score for "each . . . juvenile sentence to confinement of at least sixty

days if the defendant was released from such confinement within five years of his commencement of the instant offense." For any other juvenile sentence imposed within that period, only one criminal history point is added to the defendant's criminal history score. See USSG §4A1.2(d)(2)(B). Neither the guideline nor its commentary expands on the meaning of the phrase "juvenile sentence to confinement."

The question of what constitutes a sentence of confinement under section 4A1.2(d)(2)(A) is a question of federal law. See United States v. Carrasco-Mateo, 389 F.3d 239, 246 (1st Cir. 2004). In this case, the defendant cites no pertinent federal authority expounding on the meaning of the phrase "juvenile sentence to confinement."

The only authority cited by the defendant for the proposition that — under section 4A1.2(d)(2)(A) — a juvenile adjudication of DYS commitment is not a sentence of confinement is Commonwealth v. Samuel S., 69 N.E.3d 573 (Mass. 2017). There, the Massachusetts Supreme Judicial Court (SJC) purposed to answer whether Mass. Gen. Laws ch. 6, § 178E(f) gave Massachusetts judges "discretion to relieve [a] juvenile of the requirement to register as a sex offender." Id. at 576. The exercise of discretion was determined to be contingent upon whether the juvenile had been sentenced to immediate confinement. See id. at 577. The SJC held that — for purposes of that statute — commitment to DYS did not

"constitute a sentence of immediate confinement." See id. at 581 & n.13.

Samuel S. has only tangential bearing on the issue we must decide. It tells us that a juvenile adjudication of DYS commitment does not constitute a sentence of immediate confinement for the purpose of a particular state statute. But it tells us nothing about whether a juvenile adjudication of DYS commitment constitutes a sentence of confinement for the purpose of section 4A1.2(d)(2)(A).

We add, moreover, that the sentencing court in this case was not writing on a pristine page. In the past, we have upheld sentencing courts' determinations that Massachusetts juvenile adjudications of commitment constitute sentences of confinement. See, e.g., United States v. Gibbons, 553 F.3d 40, 45-46 (1st Cir. 2009).

To be sure, the defendant's argument has a patina of plausibility. A juvenile's commitment to DYS may result in any one of five distinct outcomes, two of which include confinement. See Mass. Gen. Laws ch. 120, § 6 (listing outcomes); see also Gibbons, 553 F.3d at 45. The record in this case is inscrutable on this point: it simply does not permit us to discern which of these outcomes attached to the defendant's commitments.

Under plain-error review, this ambiguity cuts in favor of the government. See United States v. Gonzalez, 981 F.3d 11, 22

- 11 -

(1st Cir. 2020) (explaining that — under plain-error review — ambiguity cuts against appellant); United States v. Sweeney, 226 F.3d 43, 46 (1st Cir. 2000) (stating that "'plain error' must be just that — clear-cut, patent, and obvious"). After all, to prevail on plain-error review, an appellant must do more than show that his claim of error is plausible. He must show, among other things, that the error claimed is "clear or obvious." Duarte, 246 F.3d at 60.

To constitute clear or obvious error, an error must be "contrary to existing law." United States v. Rabb, 5 F.4th 95, 101 (1st Cir. 2021); see United States v. Ackerly, 981 F.3d 70, 76 (1st Cir. 2020) (stating that such "error must offend established law"). "In other words, the error must be 'indisputable' in light of controlling law." Rabb, 5 F.4th at 101 (quoting United States v. Jones, 748 F.3d 64, 70 (1st Cir. 2014)). In the absence of some authoritative signposts — and we see none here — a district court's choice between two equally plausible but conflicting outcomes cannot constitute plain error. This is a steep climb, and the defendant has not succeeded in reaching the summit. See Rabb, 5 F.4th at 101 (noting that when "defendant has not identified any authority, whether in a statute or in the case law," for proposition advanced, claimed error cannot be clear or obvious); see also United States v. Ilarraza, 963 F.3d 1, 15 (1st Cir. 2020) (noting that appellant who, among other things, did not

- 12 -

"identify any authority defining" the phrase "confinement," as used in USSG §4A1.2(d)(2)(A), could not prevail under plain-error review). It follows that the defendant's first claim of procedural error succumbs under plain-error review.

**2**

We turn next to the defendant's argument that there is insufficient evidence in the record to support the district court's conclusion that both juvenile adjudications resulted in sentences of confinement of at least sixty days. This argument — which questions the temporal aspect of the juvenile adjudications — was not raised below and, thus, our review is for plain error. See Duarte, 246 F.3d at 60.

On plain-error review, the "bar for challenging a district court's factual findings is especially high." United States v. González-Andino, 58 F.4th 563, 568 (1st Cir. 2023). "[I]f an error pressed by the appellant turns on 'a factual finding [he] neglected to ask the district court to make, the error cannot be clear or obvious unless' he shows that 'the desired factual finding is the only one rationally supported by the record below.'" Id. (alterations in original) (quoting United States v. Takesian, 945 F.3d 553, 563 (1st Cir. 2019)).

The defendant cannot make this showing. In point of fact, he does not even attempt to do so. Instead, he relies on a purported ambiguity in the record to claim that the "period of

actual confinement could have begun sixty-one days before June 23rd" (the "Released to Community" date), "fifty-nine days before the release date," or "even . . . the day the commitment was imposed."  Because the factual finding that the defendant proposes — that the two DYS-commitment adjudications did not result in sentences of at least sixty days — is not the only plausible interpretation of the factual record, the defendant cannot prevail under plain-error review.  See id.  It follows that the defendant's second claim of procedural error must fail.[3]

**B**

This brings us to the defendant's challenge to the substantive reasonableness of his top-of-the-range sentence.  At the disposition hearing, defense counsel argued for a shorter sentence, suggesting that such a sentence would be sufficient, but not greater than necessary, to achieve the purposes of sentencing. That was enough to preserve the claim of substantive unreasonableness.  See Holguin-Hernandez v. United States, 140 S.

---

[3] For the sake of completeness, we add that the defendant's argument would also fail because he cannot meet the heightened prejudice standard under plain-error review.  See United States v. Olano, 507 U.S. 725, 734 (1993) (requiring showing that alleged error was prejudicial in order to satisfy third element of plain-error review).  Although the government bore the burden of proof before the trial court, see Gibbons, 553 F.3d at 43, the defendant — on appellate review — has "failed to point to any reason to conclude that an examination of the [juvenile records] would indicate" that he was not actually confined, Serrano-Mercado, 784 F.3d at 847.  Nor does the defendant argue that he was not confined.

- 14 -

Ct. 762, 766 (2020). Our review, therefore, is for abuse of discretion. See United States v. Flores-Nater, 62 F.4th 652, 655 (1st Cir. 2023); United States v. Bruno-Campos, 978 F.3d 801, 808 (1st Cir. 2020).

The case law makes manifest that, "[i]n the sentencing context, 'reasonableness is a protean concept.'" Clogston, 662 F.3d at 592 (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). As such, "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." Id. To determine whether a particular sentence is substantively reasonable, we ask whether it "falls within this broad universe." United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020).

Contesting the substantive reasonableness of a sentence is particularly daunting where — as here — "the challenged sentence is within a properly calculated GSR." Clogston, 662 F.3d at 593; see United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011). "To undermine the substantive reasonableness of a within-the-range sentence, a defendant must 'adduce fairly powerful mitigating reasons and persuade us that the district judge was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be "reasonable."'" Madera-Ortiz, 637 F.3d at 30 (quoting United States v. Navedo-Concepción, 450 F.3d 54, 59 (1st Cir. 2006)). This is no less true when the sentence imposed

- 15 -

is at the upper end of the applicable guideline range. See, e.g., id. at 32.

We need not tarry. "In the last analysis, a sentence will withstand a challenge to its substantive reasonableness as long as it rests on 'a plausible sentencing rationale' and reflects 'a defensible result.'" United States v. de Jesús, 831 F.3d 39, 43 (1st Cir. 2016) (quoting Martin, 520 F.3d at 96). The sentence challenged here passes this test with flying colors.

To begin, the sentencing court convincingly articulated why it believed that the defendant's conduct warranted a sentence at the upper end of the applicable GSR. The court determined that the offense conduct was "alarming in the extreme." Although the court acknowledged the defendant's "challenging" life, it emphasized the need to provide specific deterrence and to protect the public. This sentencing rationale was plausible.

So, too, the challenged sentence reflects a defensible result. For one thing, the record makes clear that the defendant violated his bail conditions when he contacted Hendricks on October 15 and sought to force her to violate her bail conditions as well. For another thing, the defendant subjected Hendricks to an evening of terror: he threatened to kill himself, kill her, and kill her relatives. To make a bad situation worse, he texted her pictures of himself with a gun to his head and went so far as to fire a shot within 100 yards of her home. Given this forbidding record,

we cannot say that a sentence at the upper end of the guideline range was indefensible.

The defendant rejoins that the sentencing court "overstated" the seriousness of his past criminal record and failed adequately to consider his personal history and characteristics. This complaint does not move the needle. We repeatedly have observed that "the weighting of [the section 3553(a)] factors is largely within the [district] court's informed discretion." Clogston, 662 F.3d at 593; see Madera-Ortiz, 637 F.3d at 32 (explaining that it is "[t]he sentencing court's task [] to sift the available information and balance the pertinent factors (both mitigating and aggravating)"). We are bound to "accord significant deference" to the district court's "informed determination that the section 3553(a) factors justify the sentence imposed." Rivera-Morales, 961 F.3d at 21. Consequently, "we cannot substitute our judgment of the appropriate sentence for that of the [district] court." Id.

Here, moreover, the court specifically stated that it had considered, among other things, all the section 3553(a) factors. Such a statement "is entitled to some weight." United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010).

Let us be perfectly clear. Cutting through the thicket of words, the defendant's real complaint is not that the district court failed to consider certain relevant factors but, rather,

- 17 -

that the district court failed to attach to certain factors the weight that he thinks they deserved. Yet, as we repeatedly have stated, "[t]hat [a] sentencing court chose not to attach to certain of the mitigating factors the significance that the [defendant] thinks they deserved does not make the sentence unreasonable." Clogston, 662 F.3d at 593; see United States v. De Jesús-Torres, 64 F.4th 33, 42 (1st Cir. 2023); United States v. Ortiz-Pérez, 30 F.4th 107, 112-13 (1st Cir. 2022); United States v. Suárez-González, 760 F.3d 96, 102 (1st Cir. 2014).

To sum up, we hold that the defendant's top-of-the-range sentence both rests on a plausible sentencing rationale and reflects a defensible result. Having failed to "adduce fairly powerful mitigating reasons and persuade us that the district judge was unreasonable in balancing" the sentencing factors, Navedo-Concepción, 450 F.3d at 59, the defendant's challenge to the substantive reasonableness of his sentence founders.

## III

We need go no further. For the reasons elucidated above, the challenged sentence is

**Affirmed**.